UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

CIT BANK, N.A. FORMERLY KNOWN
AS ONEWEST BANK, N.A.

                        Plaintiff,                          MEMORANDUM AND ORDER
                                                            14-CV-7470

        - against -

JANET HOWARD, PNC BANK, NATIONAL
ASSOCIATION, NEW YORK CITY
ENVIRONMENTAL CONTROL BOARD,
COLLEEN MCFARLANE, EDGAR ORTEGA,
NANCY ORTEGA, STACY DIXON,
TAMISHA HARRIMAN, and WINSBERT
REMY,

                        Defendants.
-----------------------------------------------------------x

GLASSER, Senior United States District Judge:

        On December 23, 2014, plaintiff CIT Bank, N.A. ("Plaintiff")—formerly known as

OneWest Bank, N.A—filed this mortgage foreclosure action against defendants Janet Howard

("Howard"); PNC Bank, National Association ("PNC"); New York City Environmental Control

Board ("ECB"); and John Doe.[1]  Plaintiff seeks to foreclose a mortgage on a property in Brooklyn

owned by Howard.  PNC and ECB are alleged to hold liens on the property subordinate to

Plaintiff's mortgage, and John Doe is a fictitious representative of persons unknown to Plaintiff at

the time it filed the complaint (e.g., tenants) with interests in the property also alleged to be

subordinate to Plaintiff's mortgage.  On October 7, 2015, Plaintiff moved for summary judgment

against Howard and for default judgment against PNC and ECB, neither of which has appeared in

this action or responded to the complaint.  Plaintiff also sought at that time to discontinue its action

------

[1] This case was originally assigned to the late Honorable Sandra L. Townes.  It was reassigned to
the undersigned on February 21, 2018.

1

against—and to strike from the case caption—defendant John Doe. In a memorandum and order dated October 26, 2016, then-presiding Judge Townes denied Plaintiff's motion for summary judgment without prejudice to re-filing and deferred decision on Plaintiff's remaining motions. Plaintiff proceeded to file a second motion for summary judgment, on December 28, 2016. In addition, in this more recent filing, rather than seeking to discontinue the action against Doe, Plaintiff now seeks to substitute six individuals in place of Doe as party defendants and to amend the case caption accordingly.

Pending now before the Court are the following motions:

(1) Plaintiff's second motion for summary judgment against Howard;

(2) Plaintiff's motion for default judgment against PNC and ECB; and

(3) Plaintiff's motion to amend the case caption to substitute Colleen McFarlane, Edgar Ortega, Nancy Ortega, Stacy Dixon, Tamisha Harriman, and Winsbert Remy as party defendants in place of John Doe.

For the reasons set forth below, Plaintiff's motions are GRANTED.

## BACKGROUND

### I.  Material Facts

Based on the Court's review of the entire record, the facts detailed in this section are supported by admissible evidence and not genuinely in dispute, except where otherwise noted.

#### A.  The Note and Mortgage

On May 25, 2007, Howard obtained a loan from American Brokers Conduit ("ABC") in the amount of $600,000, in connection with her purchase of the property located at 334 Herzl Street, Brooklyn, New York 11212 (the "Property"). Howard executed an Adjustable Rate Note (the "Note"), dated May 25, 2007, in which she promised to repay the $600,000, plus interest, to the order of ABC. Howard's loan from ABC was secured by a mortgage on the Property (the "Mortgage"), also dated May 25, 2007. Mortgage Electronic Registration Systems, Inc. ("MERS")

served as ABC's nominee and as the mortgagee of record.[2]  MERS recorded the Mortgage in the

Office of the City Register of the City of New York on June 20, 2007.  The Note and Mortgage

were subsequently modified, pursuant to a Modification Agreement dated December 8, 2008; as

part of that agreement, the principal balance on the Note was increased to $627,077.23.

The original Note—a copy of which Plaintiff attached to its complaint and its submissions

in support of summary judgment[3]—is a four-page document with two two-page addenda and two

single-page allonges.[4]  The fourth and final page of the Note bears two indorsements.  The first is

a special indorsement, from ABC to IndyMac Bank, F.S.B. ("IndyMac").  Close inspection reveals

that this special indorsement consists of two separate stamps, the first of which reads as follows:

---

[2] MERS is "a computerized system that tracks ownership of interests in residential mortgages." *CIT Bank, N.A.* v. *Metcalfe*, No. 15-CV-1829, 2017 WL 3841843, at *2 n.1 (E.D.N.Y. Aug. 17, 2017) (citing *Bank of N.Y.* v. *Silverberg*, 926 N.Y.S.2d 532, 535 (N.Y. App. Div. 2011)), *report and recommendation adopted*, 2017 WL 3841852 (E.D.N.Y. Sept. 1, 2017).  MERS never owned the Note secured by the Mortgage, so "its status as [ABC]'s nominee is of no moment to any issue before this [C]ourt." *Id.* (citing *Wells Fargo Bank* v. *Landi*, No. 13–CV–5822, 2015 WL 5655810, at *1 n.1 (E.D.N.Y. Aug. 14, 2015), *report and recommendation adopted*, 2015 WL 5657358 (E.D.N.Y. Sept. 22, 2015)).

[3] Plaintiff has submitted copies of the Note at six different places on the docket. *See* ECF Nos. 1-6, 15-2, 42-2, 43, 52, 60-3.  All six copies of the Note are substantively identical, but the indorsements are more legible on one of the copies—specifically, the copy attached as Exhibit A to the Affidavit of Plaintiff signed by JC San Pedro, a Director of CIT Bank, ECF No. 43 at 8-19—than on the other five.  The Court's description of the indorsements on the Note are based on that most legible copy.

[4] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements."  Black's Law Dictionary (10th ed. 2014).

PAY TO THE ORDER OF


WITHOUT RECOURSE
BY: AMERICAN BROKERS CONDUIT

_____
RYAN CRISCIONE
ASST. SECRETARY

A signature, seemingly Ryan Criscione's, appears on the signature line above his name.  The

second stamp—appearing in the space below "PAY TO THE ORDER OF" and above "WITHOUT

RECOURSE"—inserts the words "IndyMac Bank, F.S.B."  The indorsement is undated.

To the right of the above-described special indorsement is a second stamped indorsement,

which reads in legible part as follows:

Pay To The Order Of


Without [illegible]
IndyM[illegible]
By: [Partially Legible Signature]
Brian [illegible]
First Vice [illegible]

Based on the legible portions of this stamp, it appears to be an indorsement in blank by IndyMac,

signed by someone named Brian; Brian's last name is not legible.[5]  This indorsement is also

undated.

As to the allonges attached to the Note, each is titled "ALLONGE TO NOTE," and the top

half of each allonge specifically identifies the Note to which it is attached and states the following:

_____
[5] The Court is aware that, in her October 26, 2016 memorandum and order, Judge Townes said that "because this stamp is only partially legible" she could not "be certain whether this second indorsement is an indorsement in blank or a special indorsement making the Note payable to someone other than IndyMac."  ECF No. 55 at 15.  To this Court's eye, however, the stamp is clear enough, in the most legible copy of the Note submitted to the Court, to conclude that it is likely an indorsement in blank.  *See* ECF No. 43 at 11.

"For purposes of further endorsement of the following described Note, the allonge is affixed and becomes a permanent part of said Note." The bottom halves of the two allonges differ from each other. The bottom half of the first allonge contains a specific indorsement making the Note payable to "OneWest Bank, FSB, without recourse," and it is signed by Sandra Schneider as "Attorney-in-Fact" on behalf of the "Federal Deposit Insurance Corporation as Receiver for IndyMac Federal Bank, FSB, successor to IndyMac Bank, F.S.B." The bottom half of the second allonge, by contrast, is indorsed in blank, and it is signed by Sandra Schneider but in her capacity as Vice President of OneWest Bank, FSB. Both allonges are undated.

Though undated and suffering from some legibility problems, the Note's above-described indorsements and allonges, read together with related agreements and in light of publicly available information, reveal how the Note made its way from ABC to Plaintiff. First, as seen from the first indorsement, ABC transferred the Note to IndyMac.[6] When exactly this transfer occurred is

---

[6] There is a dispute over whether the Note was transferred to IndyMac by special indorsement. Plaintiff asserted as much in its brief in support of its first motion for summary judgment. *See* ECF No. 41 at 8. However, Howard disputed this point in her opposition to Plaintiff's first motion for summary judgment. ECF No. 50 ("Affirmation in Opp'n") ¶ 9. As Howard pointed out, Plaintiff filed a foreclosure action against her in state court, in 2009—a case that was later withdrawn—and the copy of the Note that Plaintiff submitted in connection with that state-court action included only an indorsement in blank from ABC. *See id.* at 3-4; ECF No. 50-5 at 18-31. In that copy of the Note, the first indorsement described above—which now consists of two stamps, with the second stamp inserting "IndyMac Bank, F.S.B."—consisted only of the first stamp, leaving blank the space below "PAY TO THE ORDER OF." But this apparent discrepancy, to which Plaintiff has not responded, is of no moment here. The Note may well have originally been indorsed in blank by ABC, but if so, plainly that indorsement in blank was later converted into a special indorsement to IndyMac—perhaps by IndyMac itself after it came into physical possession of the Note. There is nothing unusual or improper about converting a blank indorsement into a special indorsement; under New York law, a holder of a note "may convert a blank indorsement into a special indorsement by writing over the signature of the indorser in blank any contract consistent with the character of the indorsement." N.Y. U.C.C. Law § 3-204 (McKinney). Ultimately, it is immaterial whether the Note was originally transferred to IndyMac via special indorsement or via indorsement in blank and physical delivery. That the Note was transferred to IndyMac at some point is not genuinely in dispute,

unclear, because the indorsement is undated.  Subsequent to the transfer of the Note to IndyMac, IndyMac failed, prompting government action—to wit:

- On July 11, 2008, the Treasury Department's Office of Thrift Supervision ("OTS") closed IndyMac and appointed the Federal Deposit Insurance Corporation ("FDIC") as its receiver.  *See* ECF No. 59 ("Pl.'s Br.") at 16; FDIC, *Failed Bank Information: Information for IndyMac Bank, F.S.B., and IndyMac Federal Bank, F.S.B., Pasadena, CA*, https://www.fdic.gov/bank/individual/failed/indymac.html (last updated Mar. 26, 2015).[7]

- On that same date, the OTS created IndyMac Federal Bank, F.S.B. ("IndyMac Federal"); transferred IndyMac's assets into IndyMac Federal; and appointed the FDIC as IndyMac Federal's conservator.  *See* Pl.'s Br. at 16; FDIC, *Failed Bank Information: Information for IndyMac Bank, F.S.B., and IndyMac Federal Bank, F.S.B., Pasadena, CA*, https://www.fdic.gov/bank/individual/failed/indymac.html (last updated Mar. 26, 2015).

- On March 19, 2009, IndyMac Federal was placed in receivership, with the FDIC appointed receiver.  FDIC, *Failed Bank Information: Information for IndyMac Bank, F.S.B., and IndyMac Federal Bank, F.S.B., Pasadena, CA*, https://www.fdic.gov/bank/individual/failed/indymac.html (last updated Mar. 26, 2015).

Enter Plaintiff.  On March 19, 2009, Plaintiff purchased substantially all of the assets of IndyMac Federal pursuant to a Master Purchase Agreement ("MPA").  *See* ECF No. 60-16 (the MPA).  As part of that transaction, the FDIC as receiver for IndyMac Federal entered into a Loan Sale Agreement ("LSA") with Plaintiff whereby Plaintiff acquired certain mortgage loans from IndyMac Federal—including the Note.[8]  *See* ECF No. 60-15 (the LSA).  The specific indorsement on the first allonge reflects the transfer of the Note from IndyMac Federal to Plaintiff.

---

and in any event, as discussed below, Plaintiff does not need to provide these details in order to prove its standing to foreclose.

[7] The events described in these bullet points—as well as the sale of IndyMac Federal's assets to Plaintiff, described below—are matters of public record that have been discussed by numerous courts in this circuit. *See, e.g.*, *OneWest Bank, N.A.* v. *Melina*, 827 F.3d 214, 216 (2d Cir. 2016); *CIT Bank N.A.* v. *Elliott*, 15-CV-4395, 2018 WL 1701947, at *2 (E.D.N.Y. Mar. 31, 2018).

[8] The copy of the LSA provided to the Court does not include the schedule of the specific loans transferred to Plaintiff under that agreement, but Plaintiff asserts in its brief that the Note was among them. *See* Pl.'s Br. at 14-15.  That assertion stands undisputed, and it is corroborated by compelling and uncontroverted circumstantial evidence.  Specifically, section 3.04(b) of the LSA provides that "all Notes evidencing Loans shall be endorsed without recourse . . . as set forth in

Its precise path to Plaintiff aside, Plaintiff has established via unrebutted affidavit testimony that it was in physical possession of the original Note prior to commencing this action. In an affirmation signed and dated November 18, 2015, an attorney for Plaintiff declared under penalty of perjury that his firm, Gross Polowy, LLC ("GP")—attorneys of record for Plaintiff— received from Plaintiff the original collateral file for the Property, which file included the original Note, on November 24, 2014. In the same affirmation, the attorney further averred that GP, on behalf of Plaintiff, remained in physical possession of the original Note on December 23, 2014, the date Plaintiff commenced this action. In addition, in an affidavit dated December 21, 2016, Caryn Edwards—Assistant Secretary of Plaintiff—confirmed that Plaintiff was in possession of the original Note when it commenced this action.

Regarding the Mortgage, MERS, acting solely as nominee for ABC, assigned the Mortgage to Plaintiff. Plaintiff has submitted copies of the Assignment of Mortgage to the Court. *See, e.g.*, ECF No. 1-6 at 43. The document provides that the Mortgage was being assigned to Plaintiff "TOGETHER with the notes described in said mortgage"—i.e., together with the Note. The Assignment of Mortgage was executed by MERS on August 17, 2009, with an effective date of March 20, 2009—the day after Plaintiff acquired the Note from IndyMac Federal pursuant to the MPA and LSA.

### B. Howard's Default

Howard has been in default under the terms of the Note and Mortgage since on or about February 1, 2009, when she failed to tender the monthly installment payment due on that date. She has not made any subsequent monthly installment payments, and she has not cured her default.

---

this Agreement" and proceeds to set forth the specific form such an endorsement must take. LSA § 3.04(b). The indorsement that appears on the first allonge to the Note, described above, takes precisely the form prescribed in section 3.04(b) of the LSA.

On January 29, 2014, Plaintiff sent Howard, via first-class mail to the Property, a notice of default, pursuant to the terms of the Note and Mortgage. On the same date, Plaintiff mailed Howard a 90-day pre-foreclosure notice, in accordance with applicable New York law. Plaintiff filed the 90-day pre-foreclosure notice with the New York State Department of Financial Services on January 31, 2014.

Both the Note and Mortgage expressly permit the holder of the Note, upon a default by Howard, to require immediate payment of the entire amount due, both the full unpaid principal and any interest owed on that amount. Note § 7(C); Mortgage § 22. Plaintiff invoked this right when it filed the complaint. ECF No. 1 ("Compl.") ¶ 14.

### C. PNC, ECB, and the John Does

As alleged in the complaint, PNC and ECB are holders of liens encumbering the Property that are subject and subordinate to Plaintiff's mortgage. Plaintiff attached schedules to the complaint indicating that PNC holds a second mortgage on the Property and that ECB holds possible judgments against Howard. Plaintiff also attached to the complaint a copy of a title search reflecting the judgments ECB holds against Howard.

Regarding the John Doe defendants, the complaint alleges that they "are citizens of New York, tenants, occupants, persons or corporations, heirs at law, distributes, executors, administrators, trustees, guardians, assignees, creditors or successors whose interest or lien is either subordinate to Plaintiff's mortgage, paid in full, equitably subordinated, or adverse to Plaintiff's mortgage." *Id.* ¶ 6.

## II. Procedural History

Plaintiff commenced this foreclosure action on December 23, 2014 against Howard, PNC, ECB, and John Doe. Plaintiff served a summons and complaint on ECB on December 31, 2014;

on Howard on January 17, 2015; and on PNC on January 21, 2015.  *See* ECF Nos. 7-9. In addition, on January 3, 2015, Plaintiff served a summons and complaint on each of six tenants at the Property:  Winsbert Remy, Colleen McFarlane, Edgar Ortega, Tamisha Harriman, Stacy Dixon, and Nancy Ortega.  *See* ECF No. 7.  The affidavits of service identify these individuals as John Does 1 through 6.  *See id.*  Plaintiff also served these six individuals, along with the other defendants, with the scheduling order for the initial conference in the case.  *See* ECF No. 11. However, Plaintiff never amended the complaint to add these individuals (or substitute them for John Doe) as party defendants.

On April 16, 2015, Howard filed an answer to the complaint.  ECF No. 19 ("Answer"). The answer contains a general denial of all of the complaint's allegations and advances nine defenses.  No other defendant has appeared or filed an answer, and on April 20, 2015, upon Plaintiff's request, the Clerk of the Court entered a certificate of default for defendants PNC and ECB.  ECF Nos. 21-22.

On October 7, 2015, Plaintiff filed a motion seeking (i) summary judgment on its claim for foreclosure against Howard; (ii) default judgment against PNC and ECB; and (iii) an order striking John Doe from the case caption and discontinuing the action as against the Doe defendants. Neither PNC nor ECB filed an opposition to the motion for default judgment (as noted above, they still have not appeared in this action).  Howard opposed the motion for summary judgment, and that motion was fully briefed by Plaintiff and Howard.  Howard's sole argument in opposition was that there were issues of material fact as to whether Plaintiff had standing to foreclose.  *See* Affirmation in Opp'n ¶ 6.  On October 26, 2016, Judge Townes issued a memorandum and order denying Plaintiff's motion for summary judgment without prejudice to re-filing. ECF No. 55.  The denial was without prejudice because Plaintiff's reply affirmation in further support of its

motion—to which Howard had not had an opportunity to respond—suggested that Plaintiff would be able to cure certain identified deficiencies with its motion if given the opportunity to re-brief. Judge Townes deferred decision as to Plaintiff's other motions at that time.

On December 28, 2016, Plaintiff filed a second motion for summary judgment against Howard. Per this motion, Plaintiff also now seeks to amend the case caption to substitute Winsbert Remy, Colleen McFarlane, Edgar Ortega, Tamisha Harriman, Stacy Dixon, and Nancy Ortega as party defendants in place of John Doe. Howard has not filed an opposition or otherwise responded to Plaintiff's second motion for summary judgment.

## DISCUSSION

Before the Court are Plaintiff's motions for (i) summary judgment against Howard; (ii) default judgment against PNC and ECB; and (iii) amendment of the case caption to substitute the individuals named above as party defendants in place of John Doe. The Court addresses each of these motions in turn below.

### I.    Plaintiff's Motion for Summary Judgment Against Howard

#### A.  The Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fincher* v. *Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Roe* v. *City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)). "A fact is material if it might affect the outcome of the suit under the governing law." *Id.* (quoting *Roe*, 542 F.3d at 35). In deciding a motion for summary judgment, a court must "construe the facts in the light most favorable to the nonmoving party" and "resolve all ambiguities and draw all reasonable

inferences against the movant." *Brod* v. *Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams* v. *R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To survive a motion for summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Reiseck* v. *Universal Commc'ns of Miami*, No. 06-CV-777, 2012 WL 3642375, at *2 (S.D.N.Y. Aug. 23, 2012) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 586 n.11). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer* v. *Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

**B. Local Civil Rule 56.1**

Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York provides that a party moving for summary judgment must submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civil Rule 56.1(a). A party's "[f]ailure to submit such a statement may constitute grounds for denial of the motion." *Id.* Here, Plaintiff attached a statement of material facts to its pre-motion conference application, ECF No. 32, in compliance with Judge Townes's Individual Rules, but it failed to file a Rule 56.1 statement with its first motion for summary judgment. Even though Judge Townes pointed out this deficiency in her memorandum and order denying Plaintiff's motion, Plaintiff has not included a Rule 56.1 statement with its second motion for summary judgment either.

Though this oversight is inexplicable, the Court will not deny Plaintiff summary judgment for what is, at bottom, a minor procedural defect. As noted, Plaintiff did submit a statement of

material facts with its pre-motion conference application, and that statement substantially complied with Rule 56.1 (though it included the wrong case caption); Plaintiff could have satisfied Rule 56.1 by simply re-filing that statement with its motion for summary judgment. More importantly, "courts have discretion to overlook a party's failure to comply with local rules, including Rule 56.1." *Locke* v. *St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 83 (E.D.N.Y. 2010) (citing *Holtz* v. *Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)). Indeed, "[e]ven in the absence of a Rule 56.1 statement altogether, courts have proceeded to rule on the basis of the underlying evidence." *Mauro* v. *Costco Wholesale Corp.*, No. 09-CV-1391, 2013 WL 3816731, at *3 (E.D.N.Y. July 22, 2013); *see also, e.g., Doe* v. *Nat'l Bd. of Medical Examiners*, No. 03 Civ. 4034, 2004 WL 912599, at *3, 9 (S.D.N.Y. Apr. 29, 2004) (granting plaintiffs' motion for partial summary judgment despite their failure to submit a proper Rule 56.1 statement). Where a Rule 56.1 statement has not been filed, a court "may in its discretion opt to 'conduct an assiduous review of the record.'" *Holtz*, 258 F.3d at 73 (quoting *Monahan* v. *New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000)). The Court has conducted a thorough review of the record here and will proceed to rule on that basis.

### C. Plaintiff's Prima Facie Case for Foreclosure

New York law provides that, in a mortgage foreclosure action, summary judgment "is appropriate where the Note and Mortgage are produced to the Court along with proof that the Mortgagor has failed to make payments due under the Note." *OneWest Bank, N.A.* v. *Melina*, No. 14-CV-5290, 2015 WL 5098635, at *3 (E.D.N.Y. Aug. 31, 2015) (quoting *Regency Sav. Bank, F.S.B.* v. *Merrit Park Lands Assocs.*, 139 F. Supp. 2d 462, 465 (S.D.N.Y. 2001)), *aff'd*, 827 F.3d 214 (2d Cir. 2016). "Once the plaintiff has established its prima facie case by presenting the Note, Mortgage and proof of default, the Mortgagee has a presumptive right to foreclose which can only

be overcome by an affirmative showing by the Mortgagor." *Id.* (quoting *Regency Sav. Bank, F.S.B.*, 139 F. Supp. 2d at 465-66).

Here, Plaintiff has produced the Note and Mortgage—as attachments to its complaint and again as exhibits in support of its motions for summary judgment. In addition, Plaintiff has provided proof of Howard's default in the form of (i) unrebutted affidavit testimony and (ii) copies of the notice of default and pre-foreclosure notice sent to Howard. *See, e.g.*, *CIT Bank, N.A.* v. *Metcalfe*, No. 15-CV-1829, 2017 WL 3841843, at *4 (E.D.N.Y. Aug. 17, 2017) (finding similar proof sufficient), *report and recommendation adopted*, 2017 WL 3841852 (E.D.N.Y. Sept. 1, 2017); *OneWest Bank, N.A.* v. *Rosado*, No. 14 Civ. 9917, 2016 WL 3198305, at *2 (S.D.N.Y. June 7, 2016) (same); *E Sav. Bank, FSB* v. *Rabito*, No. 11-CV-2501, 2012 WL 3544755, at *4-5 (E.D.N.Y. Aug. 16, 2012) (same). Accordingly, Plaintiff has established its prima facie case for foreclosure.

### D. Howard's Affirmative Defenses

With its prima facie case for foreclosure established, Plaintiff's presumptive right to foreclose can only be overcome by an affirmative showing by Howard. In Howard's answer to the complaint, she asserted nine defenses, one of which was that Plaintiff lacks standing to foreclose on the Mortgage. *See* Answer ¶¶ 2-13. Plaintiff briefed each of those nine defenses in its moving papers in support of its first motion for summary judgment, arguing that they lacked merit. *See* ECF No. 41 at 14-22. In her opposition, however, Howard argued only her standing defense and failed to respond to Plaintiff's arguments regarding her other defenses. Howard has therefore abandoned these other defenses, and the Court need only address the issue of Plaintiff's standing. *See CIT Bank N.A.* v. *Elliott*, No. 15-CV-4395, 2018 WL 1701947, at *10 (E.D.N.Y. Mar. 31, 2018); *see also Jackson* v. *Federal Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the

case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

"Where, as here, standing is put into issue by the defendant, the plaintiff must prove its standing in order to be entitled to relief." *U.S. Bank, N.A.* v. *Collymore*, 890 N.Y.S.2d 578, 580 (N.Y. App. Div. 2009). Under New York law, "[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note." *Melina*, 827 F.3d at 222 (quoting *Wells Fargo Bank, N.A.*, v. *Rooney*, 19 N.Y.S.3d 543, 544 (N.Y. App. Div. 2015)). "Either a written assignment of the underlying note or the physical delivery of the note prior to commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." *Id.* (quoting *Collymore*, 890 N.Y.S.2d at 580).

Plaintiff here has demonstrated that, at the time it commenced the action, it was both the holder *and* the assignee of the Note. Regarding Plaintiff's status as a holder, New York's Uniform Commercial Code defines "holder" as "the person in possession of a negotiable instrument"—such as the Note[9]—"that is payable either to bearer or to an identified person that is the person in

---

[9] To be a "negotiable instrument" within the meaning of Article 3 of New York's Uniform Commercial Code (the "UCC"), a writing must

> (a) be signed by the maker or drawer; and (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by [Article 3 of the UCC]; and (c) be payable on demand or at a definite time; and (d) be payable to order or to bearer.

N.Y. U.C.C. Law § 3-104(1) (McKinney). The Note here meets each of these requirements: It (a) is signed by Howard; (b) contains an unconditional promise by Howard to pay $600,000, plus interest at a defined rate, (c) on or before June 1, 2037, by making monthly payments beginning on July 1, 2007; and (d) is payable to bearer—as shown by the second allonge to the Note, which is indorsed in blank, *see, e.g.*, *Deutsche Bank Nat'l Tr. Co.* v. *Holler*, 65 N.Y.S.3d 491, 2017 WL 3390578, at *6 (N.Y. Sup. Ct. 2017) ("The effect of an endorsement [in blank] is to make the note 'payable to bearer' pursuant to [the UCC]." (citing N.Y. U.C.C. Law § 3-104; *Franzese*

possession." N.Y. U.C.C. Law § 1-201(21) (McKinney). Here, the Note is payable to bearer, as shown by the indorsement in blank on the second allonge, and Plaintiff has now established via unrebutted affidavit testimony—as it had not when it first moved for summary judgment—that it physically possessed the Note when it filed the complaint. As such, Plaintiff was the holder of the Note when it filed this action, giving it standing to foreclose. This conclusion would be no less clear if the details regarding delivery of the Note to Plaintiff were unclear. As discussed above, the route traced by the Note—from ABC to IndyMac to IndyMac Federal to Plaintiff—can be discerned from the Note's various indorsements and allonges and from the MPA and LSA by which Plaintiff purchased the Note from IndyMac Federal. But even if the details regarding how Plaintiff came into the possession of the Note were less clear (or absent entirely), the fact of Plaintiff's possession at the time it commenced the action would be enough to give it standing. "New York courts have repeatedly held that proof of physical possession—such as the affidavits of [Plaintiff's] corporate representative and counsel in this case—is sufficient on its own to prove a plaintiff's standing to foreclose on the mortgage associated with the note." *Melina*, 827 F.3d at 223 (collecting cases).

As an independent ground for its standing, Plaintiff has also shown that it is the assignee of the Note. "No special form or language is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it." *Id.* (quoting *Suraleb, Inc.* v. *Int'l Trade Club, Inc.*, 788 N.Y.S.2d 403, 404 (N.Y. App. Div. 2004)). Here, the LSA provides that IndyMac Federal "hereby sells, transfers, conveys, assigns and delivers to [Plaintiff], and [Plaintiff] hereby purchases, accepts and assumes from [IndyMac Federal], all of [IndyMac

---

v. *Fidelity N.Y. FSB*, 625 N.Y.S.2d 275 (N.Y. App. Div. 1995)). Accordingly, the Note is a negotiable instrument under Article 3 of the UCC.

Federal's] rights, title and interests in, to and under" certain defined assets, which defined assets include the Note. LSA § 2.01(a). As multiple courts (including the Second Circuit) considering the LSA have held, this language is sufficient under New York law to assign the Note to Plaintiff and, consequently, sufficient to establish Plaintiff's standing to foreclose. *See Melina*, 827 F.3d at 223; *Elliott*, 2018 WL 1701947, at *8-9; *Metcalfe*, 2017 WL 3841843, at *3; *OneWest Bank, N.A.* v. *Perez*, No. 14-CV-3465, 2015 WL 12659924, at *7-8 (E.D.N.Y. July 18, 2015). Separately, assignment of a note can also be accomplished "by a written reference to the note within the mortgage assignment." *U.S. Bank, N.A.* v. *Squadron VCD, LLC*, No. 10-CV-5484, 2011 WL 4582484, at *7 (S.D.N.Y. Oct. 3, 2011) (citing *In re Stralem*, 758 N.Y.S.2d 345, 347-48 (N.Y. App. Div. 2003) (holding a note was properly assigned when the mortgage was assigned "together with the note or obligation described in or secured by said mortgage")), *aff'd*, 504 F. App'x 30 (2d Cir. 2012). The Assignment of Mortgage here contained just such a written reference to the Note, stating that the Mortgage was being assigned to Plaintiff "TOGETHER with the notes described in said mortgage." ECF No. 1-6 at 43. This language, too, constitutes a valid assignment of the Note, providing Plaintiff with another independent basis for its standing to foreclose.

In opposing Plaintiff's first motion for summary judgment, Howard made several arguments challenging Plaintiff's standing, none of which disturb the above analysis. First, Howard argued that there were questions as to whether Plaintiff actually possessed the Note when it commenced the action. *See* Affirmation in Opp'n ¶ 7. This argument no longer holds any weight, as Plaintiff has since provided unrebutted evidence establishing that it did possess the Note when it commenced the action. Second, Howard highlighted the differences between the copy of the Note submitted in the 2009 state-court action and the copy submitted in this action, and she proceeded to argue that the salient difference between the two copies—that the former contains

only an indorsement in blank from ABC that, in the latter, has been converted into a special indorsement to IndyMac—indicates that Plaintiff is not a "holder in due course" under the UCC.[10] *See* Affirmation in Opp'n at 2-6. This argument fails on multiple levels. To begin with, the argument is ostensibly premised on the assumption that the difference between the two copies cannot be innocently explained; the specific indorsement to IndyMac, Howard suggests, must not be authentic, otherwise it would have appeared on the copy of the Note attached to the state-court action in 2009. This inference is not warranted, however. The UCC allows for a blank indorsement to be converted into a specific indorsement, *see* N.Y. U.C.C. Law § 3-204(3), and the likely explanation for what happened here is that (i) the Note was originally indorsed in blank by ABC but later specifically indorsed to IndyMac and (ii) in the 2009 state-court action, Plaintiff submitted a copy of the Note from before the indorsement in blank was converted to a special indorsement. This sequence of events is not necessarily inconsistent with Plaintiff taking the Note for value and in good faith, without notice that it was overdue or that there were defenses against it, as required to be a holder in due course.

More to the point, though, Howard's focus on whether Plaintiff is a holder in due course, as opposed to a mere holder, is a red herring.[11] The significant difference between a holder in due course and a mere holder is that a holder in due course takes an instrument free from all defenses of any party to the instrument (subject to some exceptions), whereas a mere holder is not similarly

---

[10] A holder in due course, under the UCC, is "a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." N.Y. U.C.C. Law § 3-302(1).

[11] Plaintiff is likely not a holder in due course, for a reason not explored by Howard: "A holder does not become a holder in due course of an instrument . . . by purchasing it as part of a bulk transaction not in regular course of business of the transferor." N.Y. U.C.C. Law § 3-302(3)(c). Plaintiff purchased the Note from IndyMac Federal in a bulk transaction executed with FDIC acting in its capacity as conservator for IndyMac Federal.

immune to any potential defenses. But here, Howard has maintained only one defense: that Plaintiff lacks standing to foreclose on the mortgage. And as discussed above, a mere holder, no less than a holder in due course, has standing to foreclose on a mortgage associated with the note it holds. Whether Plaintiff is a holder in due course of the Note is thus irrelevant to whether it has standing to foreclose.

Howard's remaining arguments against Plaintiff's standing fare no better. Howard separately argued that Plaintiff has not proven that it took the Note for value or in good faith, *see* Affirmation in Opp'n at 6, but Plaintiff need not show either in order to prove its standing. In addition, Howard unsuccessfully attempted to raise questions regarding the circumstances of the Mortgage assignment, wrongly asserting that certain dates contradict each other and leveling an entirely unsupported accusation regarding the credibility of the person who signed the Assignment of Mortgage. *Id.* at 7-8. These arguments scarcely merit mention, let alone a response, and they do not alter the Court's conclusion that Plaintiff is the assignee of both the Mortgage and the Note.

In sum, Plaintiff has amply demonstrated that it has standing to foreclose on the Mortgage, as a holder and assignee of the Note, and Howard has failed to show that she has any viable defense to Plaintiff's prima facie case of foreclosure. Therefore, Plaintiff has established that it is entitled to summary judgment on its foreclosure claim against Howard and, consequently, to a judgment of foreclosure and sale of the Property. As discussed below, however, the Court cannot order a judgment of foreclosure and sale at this time due to deficiencies in Plaintiff's proof regarding the amounts due under the Note.

### E. Damages

As part of a judgment of foreclosure and sale, Plaintiff seeks a damages award for the unpaid principal and interest due on the Note and Mortgage, "together with late charges, monies

advanced for taxes, assessments, insurance, maintenance, and preservation of the property, and the costs, allowances, expenses of sale, and reasonable attorney's fees for the foreclosure." Compl. ¶ 15. In total, Plaintiff seeks damages in the amount of $940,028.03, which amount consists of $931,673.24 due under the Note, $2,050.29 in fees and disbursements, and $6,304.50 in attorney's fees. ECF No. 60-13 ("Statement of Damages").

Howard has not raised any genuine issue of material fact as to Plaintiff's requested damages, nor has she mounted a legal defense against any of the requested damages. Nonetheless, even if Howard had failed to respond to the complaint and the Court were entering a default judgment against her, upon a finding of liability the Court would still need to "conduct an inquiry sufficient to establish damages to a 'reasonable certainty.'" *Rabito*, 2012 WL 3544755, at *7 (quoting *Credit Lyonnais Sec. (USA), Inc.* v. *Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). In conducting this inquiry, "the court may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum." *Id.* (quoting *Fustok* v. *ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). With this standard in mind, the Court considers the various categories of damages requested by Plaintiff.

### 1. Amount Due on the Note

Plaintiff seeks $931,673.24 as the amount due on the Note. This amount, as tabulated by Plaintiff, consists of (i) $624,147.50 in unpaid principal; (ii) $243,417.48 in interest accrued from February 1, 2009 to January 1, 2017 at a rate of 5.5 percent per annum; (iii) $3,913.80 in pre-acceleration late charges; (iv) $67,788.50 in escrow advances; (v) $882.00 for property preservation and inspections; and (vi) $1,895.00 for broker's price opinions, less (vii) $10,371.04 in credits to Howard for her payments to escrow and recoverable balance statements. Statement of Damages at 1; ECF No. 60-1 ¶ 10. Under the terms of the Note and Mortgage, Plaintiff is

entitled to each of these categories of damages. *See* Note § 7(A)-(C); Mortgage §§ 1, 3-5, 9, 22. The Court cannot award judgment on these damages at this time, however, because Plaintiff has not adequately supported the amounts requested.

In support of the claimed amount due on the Note, Plaintiff has submitted (i) an affidavit from Caryn Edwards, Assistant Secretary of Plaintiff, in which she attests to the amounts due under the Note; (ii) a sworn Statement of Damages signed by Plaintiff's counsel; and (iii) the Note, Mortgage, and Modification Agreement. Other courts in this District, in similar mortgage foreclosure actions, have found substantially identical evidence to be inadequate to establish damages to a "reasonable certainty." *See Happy Homes, LLC* v. *Jenerette-Snead*, No. 15-CV-1788, 2016 WL 6599826, at *5 (E.D.N.Y. Nov. 7, 2016) ("[S]everal courts in the Eastern District of New York have required more than production of the initial mortgage and an affidavit stating the outstanding principal on a loan [to establish principal and interest damages in a mortgage foreclosure action]." (collecting cases)). Indeed, at least three such cases involved Plaintiff. *See CIT Bank* v. *Seeram*, No. 16-CV-2608, 2017 WL 8220204, at *4-5 (E.D.N.Y. Feb. 15, 2017), *report and recommendation adopted*, 2018 WL 1308003 (E.D.N.Y. Mar. 13, 2018); *CIT Bank, N.A.* v. *Paganos*, No. 14-CV-3987, 2016 WL 3945343, at *2 (E.D.N.Y. July 19, 2016); *OneWest Bank, N.A.* v. *Vaval*, No. 14-CV-3437, 2016 WL 3945342, at *2 (E.D.N.Y. July 19, 2016).

In *CIT Bank* v. *Seeram*, for example, Plaintiff presented essentially the same evidence it has here—an affidavit attesting to the amount due, a sworn statement of damages, and the relevant note and mortgage—and Magistrate Judge Bloom found this evidence insufficient to support Plaintiff's request for damages. *See Seeram*, No. 16-CV-2608, ECF No. 19 at 1-2 (E.D.N.Y. Nov. 2, 2016). Judge Bloom directed Plaintiff to supplement the record with additional documents to support its request for damages and subsequently ruled for Plaintiff, on its damages request, after

Plaintiff did so. *See Seeram*, 2017 WL 8220204, at *4-5. Specifically, in *Seeram*, Plaintiff supplemented the record as to damages with, among other things, (i) "an accrued interest schedule detailing the interest that ha[d] accrued since defendant stopped paying the loan; (ii) "records showing [defendant's] payment history of the loan; (iii) "spreadsheets detailing the interest rate over time and escrow expenses"; and (iv) "a breakdown of the inspection and broker price opinion costs." *Id.* at *5.

Judge Amon rejected similarly supported requests for damages by Plaintiff in *Paganos* and *Vaval*. In each of those cases, Plaintiff's assertion as to the amount of unpaid principal due was at odds with the amount listed in the loan modification agreements, yet Plaintiff provided "no evidence or explanation to support the claimed outstanding principal." *Paganos*, 2016 WL 3945343, at *2; *Vaval*, 2016 WL 3945342, at *3. Morover, in *Paganos*, Plaintiff failed to provide "documentation to support its claims for interest, late charges, property inspection, broker price opinions, and escrow advances." *Paganos*, 2016 WL 3945343, at *2.

Here, as in *Seeram*, *Paganos*, and *Vaval*, Plaintiff has not provided adequate evidentiary support for the claimed amounts due under the Note. The kind of detailed evidence that Plaintiff supplemented the record with in *Seeram* is as yet lacking here. Moreover, just as in *Paganos* and *Vaval*, the claimed outstanding principal amount ($624,147.50) does not match the outstanding principal amount listed in the Modification Agreement ($627,077.23), and Plaintiff has not explained the apparent discrepancy.[12] And as in *Paganos*, Plaintiff has "provide[d] no

---

[12] The explanation may simply be that Howard made a payment (or payments) in between the loan modification on December 8, 2008 and her default on February 1, 2009. But the Court cannot bridge the gap in Plaintiff's proof with judicial guesswork. *See Paganos*, 2016 WL 3945343, at *2 ("Although it stands to reason that Paganos made payments which decreased the principal between April 29, 2010, when the mortgage was modified, and November 1, 2012, when he defaulted, CIT Bank has provided no evidence or explanation to support the claimed outstanding principal."); *accord Vaval*, 2016 WL 3945342, at *3.

documentation to support its claims for interest, late charges, property inspection, broker price opinions, and escrow advances." *Paganos*, 2016 WL 3945343, at *2. In fact, far from simply lacking sufficient documentation, Plaintiff's claim for interest appears to be contradicted by the relevant contractual agreement. Plaintiff's claim for unpaid interest stipulates that, as of February 1, 2009, interest was accruing at a rate of 5.5 percent per annum. But according to the Modification Agreement, the annual interest rate as of February 1, 2009 was 4.5 percent and did not increase to 5.5 percent until January 1, 2014. The Court cannot issue a damages award on this sparse and contradictory record.

### 2. Fees and Costs

The Note authorizes Plaintiff to recover "all of its costs and expenses in enforcing th[e] Note." Note § 7(E); *see also* Mortgage § 22 ("In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law . . . ."). Nonetheless, to receive a damages award that compensates it for its fees and costs, Plaintiff must provide evidence, beyond its mere say-so, of the fees and costs it incurred, and Plaintiff has not done so for all of its claimed costs here. Plaintiff seeks $2,050.29 in damages for "fees and disbursements"—$400.00 for the civil case filing fee, $395.69 for amounts paid for searches (e.g., title searches), $1,219.60 for serving copies of the summons and complaint, and $35.00 for the clerk's fee to file the notice of pendency. Statement of Damages at 2. The filing fees are matters of public record, and Plaintiff's payment of those fees is reflected on the docket. But Plaintiff has provided no documentation for the costs it claims to have incurred to pay for searches and service; absent sufficient additional documentation, these claimed costs will not be included as damages in any eventual judgment of foreclosure and sale.

### 3. Attorneys' Fees

By the terms of the Note and Mortgage, Plaintiff is entitled to its reasonable attorneys' fees incurred in prosecuting this action. *See* Note § 7(E); Mortgage § 22. Plaintiff seeks attorneys' fees in the amount of $6,304.50. Statement of Damages at 2; ECF No. 60-12 ("Attorney Fee Affirmation").

In the Second Circuit, courts determine the amount of attorneys' fees to award a prevailing party "by calculating the 'presumptively reasonable fee.'" *Seeram*, 2017 WL 8220204, at *5 (quoting *Simmons* v. *N.Y.C. Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009)). To determine the "presumptively reasonable fee," a court "multipl[ies] the number of hours spent on the litigation by 'a reasonable hourly rate.'"[13] *Id.* (quoting *Hensley* v. *Eckerhart*, 461 U.S. 424, 433 (1983)). A reasonable hourly rate is "the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2007). Whether a given attorney's hourly rate is reasonable depends on "the prevailing hourly rate in the community," and "the relevant 'community' is the district where the district court sits." *Ehrlich* v. *Royal Oak Fin. Servs., Inc.*, No. 12-CV-3551, 2012 WL 5438942, at *3 (E.D.N.Y. Nov. 7, 2012) (citing *Polk* v. *N.Y. State Dep't of Corr. Servs., Inc.*, 722 F.2d 23 (2d Cir. 1983)). "The burden is on the party moving for attorney's fees to justify the hourly rate sought." *Id.*

The traditional rule in the Second Circuit is that "contemporaneous time records are a prerequisite for attorney's fees." *Seeram*, 2017 WL 8220204, at *5 (quoting *N.Y. State Ass'n for Retarded Children* v. *Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983)). Where, as here, the prevailing party's counsel charged a flat fee, courts generally will not award the flat fee "unless the supporting

---

[13] This formula for calculating the presumptively reasonable fee is known as "the lodestar method." *See Restivo* v. *Hessemann*, 846 F.3d 547, 589 (2d Cir. 2017).

documentation is detailed enough to satisfy the Second Circuit's requirement that attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done." *Incredible Foods Grp., LLC* v. *Unifoods, S.A. De C.V.*, No. 14-CV-5207, 2016 WL 4179943, at *6 (E.D.N.Y. Aug. 5, 2016) (quoting *OneWest Bank, N.A.* v. *Cole*, No. 14 Civ. 3078, 2015 WL 4429014, at *6-7 (E.D.N.Y. July 17, 2015)). "Even where there is a flat rate agreement, the Court must still examine whether the fee is reasonable, and it does so by calculating the presumptively reasonable fee via the lodestar method and comparing it to the flat fee amount." *Cole*, 2015 WL 4429014, at *6. Absent adequate records of the legal work performed, "the court may deny fees altogether or reduce the award." *Incredible Foods*, 2016 WL 4179943, at *6 (quoting *In re City of New York*, No. 03-CV-6049, 2011 WL 7145228, at *11 (E.D.N.Y. Dec. 2, 2011)). Courts in this District have done both in cases similar to this one, including other cases involving this Plaintiff. *See Seeram*, 2017 WL 8220204, at *6 (collecting cases).

Here, Plaintiff seeks attorneys' fees in the amount of $6,304.50, which represents a "total flat fee" of $4,950.00 that Plaintiff's counsel charges for foreclosure work plus an additional $1,354.50 in legal fees incurred for work on the motion for summary judgment. Attorney Fee Affirmation ¶¶ 3, 5-6. Plaintiff's counsel has not submitted contemporaneous time records. As an affirmation from counsel explains, for work that it performs on a flat-fee basis, counsel does not maintain (and thus cannot produce) contemporaneous time records. *Id.* ¶ 7. The affirmation does, however, provide a non-exhaustive list of the work performed on Plaintiff's file, and the affirmation indicates how much "attorney time" and how much "paralegal time" was spent on each listed task, to the tenth of an hour. *See id.* ¶ 4. In total, the affirmation accounts for 10.4 paralegal hours and 7.0 attorney hours; the affirmation does not indicate who the paralegal(s) and attorney(s) were that did the listed work. Also, the 17.4 hours of paralegal and attorney time accounted for

on the affirmation do not include time spent on the motion for summary judgment; the motion for summary judgment is listed separately as costing $1,354.50 in legal fees, but the affirmation does not provide any information regarding who worked on the motion or for how long. *See id.* ¶ 5.

The Court concludes that the affirmation submitted by Plaintiff's counsel is sufficient to award some, but not all, of the requested attorneys' fees. The portion of the requested attorneys' fees attributable to the motion for summary judgment will be denied in its entirety. Plaintiff's counsel has provided no information regarding how much time was spent on the motion or who worked on it, so the Court cannot determine what a reasonable fee for that work would be. The Court can, on the other hand, calculate the presumptively reasonable fee for the 17.4 hours of paralegal and attorney work for which Plaintiff's counsel has accounted. In this District, "the prevailing rate for legal assistants [i.e., paralegals] ranges from $70 to $100." *Paganos*, 2016 WL 3945343, at *3. Because Plaintiff has provided no information regarding the experience level of the paralegals who worked on this case, the Court will consider the hourly paralegal rate here to be at the bottom of the range—$70. *See id.* Similarly, Plaintiff has provided no information regarding the attorney(s) who worked on this case, so the Court will calculate the presumptively reasonable fee by assuming that any attorney who worked on this case was a junior associate. The prevailing hourly rate for junior associates in this District is between $100 and $200, *see Mary Jo C.* v. *DiNapoli*, No. 09-CV-5635, 2014 WL 7334863, at *5 (E.D.N.Y. Dec. 18, 2014) (collecting cases); the Court will split the difference and assume that a reasonable hourly rate for the attorney(s) who worked on this case is $150. Accordingly, using the lodestar method, the Court calculates the presumptively reasonable fee as follows: 7.0 attorney hours x $150 = $1,050; 10.4 paralegal hours x $70 = $728; and $1,050 + $728 = $1,778. The Court thus concludes that Plaintiff is entitled to $1,778 in attorneys' fees.

## II.    Plaintiff's Motion for Default Judgment Against PNC and ECB

Plaintiff seeks a default judgment against PNC and ECB. These defendants have not appeared in this action, and the Clerk of the Court has certified their default. *See* ECF No. 22. As defaulting parties, PNC and ECB are deemed to have conceded all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc.* v. *E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Nonetheless, a default judgment is only warranted if "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera* v. *ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (quoting *Leider* v. *Ralfe*, No. 01 Civ. 3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004)).

Under New York's Real Property Actions and Proceedings Law (the "RPAPL"), the necessary parties to a mortgage foreclosure include "[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff." N.Y. Real Prop. Acts. Law § 1311(3). Moreover, "[w]here a city or any department, bureau, board, commission, officer, agency or instrumentality thereof is a defendant in an action affecting real property," the plaintiff must include in the complaint "[d]etailed facts showing the particular nature of the interest in or lien on the real property and the reason for making such city a party-defendant." *Id.* § 202-a. "The joinder of junior lienholders in a foreclosure action operates 'to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale.'" *Metcalfe*, 2017 WL 3841843, at *6 (quoting *6820 Ridge Realty LLC* v. *Goldman*, 701 N.Y.S.2d 69, 72 (N.Y. App. Div. 1999)). Inversely, "[f]ailure to join a junior lienholder as a necessary party 'leaves that party's rights unaffected by the judgment and sale.'" *Id.* (quoting *6820 Ridge Realty LLC*, 701 N.Y.S.2d at 72). "Courts have found that entry of a default judgment [against a defendant] under Fed. R. Civ. P. 55

is appropriate where the complaint alleges 'nominal liability'" against that defendant—i.e., where the complaint alleges that any lien the defendant has on the subject property is subordinate to the plaintiff's lien. *Bank of America, N.A.* v. *3301 Atlantic, LLC*, No. 10-CV-5204, 2012 WL 2529196, at *14 (E.D.N.Y. June 29, 2012) (collecting cases).

The well-pleaded allegations here, accepted as true, establish the nominal liability of PNC and ECB. Plaintiff alleges in the complaint that PNC holds a lien encumbering the Property that is subject and subordinate to the Mortgage, and Plaintiff attached to the complaint a schedule indicating that PNC's lien is a second mortgage on the Property. *See* Compl. ¶ 6, Schedule B. These allegations suffice to establish PNC's nominal liability. As to ECB, Plaintiff has alleged that ECB also holds a lien on the Property that is subject and subordinate to the Mortgage, and in support of that allegation Plaintiff attached a copy of a title search reflecting judgments ECB holds against Howard. *See* Compl. ¶ 5, Schedule C. These allegations establish ECB's nominal liability and also satisfy the RPAPL's heightened pleading requirements for city defendants. *See CIT Bank* v. *Louis*, No. 15-CV-597, 2017 WL 448956, at *2 (S.D.N.Y. Jan. 26, 2017) (nominal liability was well-pleaded where plaintiff submitted title searches reflecting monies owed to ECB by the property owner); *CIT Bank, N.A.* v. *Dambra*, No. 14 Civ. 3951, 2015 WL 7422348, at *6 (E.D.N.Y. Sept. 25, 2015) (same). Accordingly, the Court concludes that Plaintiff is entitled to a default judgment against PNC and ECB extinguishing their rights in the Property

### III.     Motion to Amend the Case Caption

Plaintiff moves to amend the case caption to substitute Winsbert Remy, Colleen McFarlane, Edgar Ortega, Tamisha Harriman, Stacy Dixon, and Nancy Ortega as party defendants in place of John Doe. Plaintiff served a summons and complaint on each of these individuals, and the affidavits of service identified them as John Does 1 through 6. *See* ECF No. 7. They appear

to be tenants at the Property, and as such they are necessary parties to this foreclosure action. *See Rabito*, 2012 WL 3544755, at *3 (citing *1426 46 St., LLC* v. *Klein*, 876 N.Y.S.2d 425, 427 (N.Y. App. Div. 2009) ("[T]enants are necessary parties to a foreclosure action.")). Therefore, the Court grants Plaintiff's motion to amend the case caption. *See id.* (granting motion to amend caption to replace John Doe defendants with named defendants believed to be tenants at mortgaged property); *Christiana Bank & Trust Co.* v. *Dalton*, No. 06-CV-3206, 2009 WL 4016507, at *5 (E.D.N.Y. Nov. 17, 2009) (same).

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motions for (i) summary judgment against Howard, (ii) default judgment against PNC and ECB, and (iii) amendment of the case caption. In order to effectuate foreclosure and sale, the Court hereby directs Plaintiff to submit, on or before July 13, 2018, (i) affidavits and supporting documentation sufficient for the Court to determine the amount due under the Note, as well as any additional supporting documentation Plaintiff would like to provide regarding its request for fees and costs, and (ii) a revised proposed judgment of foreclosure and sale. Any defendant who wishes to oppose these submissions may do so within fifteen days of the date that those submissions are filed.

SO ORDERED.

Dated:      Brooklyn, New York
           June 15, 2018

/s/ _____
I. Leo Glasser          U.S.D.J.